673 So.2d 1292 (1996)
Alphonse VALLELUNGO
v.
The CITY OF NEW ORLEANS.
No. 95-CA-0264.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 1996.
*1294 Milton Osborne, Jr., Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendant/Appellant, The City of New Orleans.
Magdalen Blessey Bickford, Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, for Plaintiff/Appellee, Alphonse Vallelungo.
Before BYRNES, CIACCIO and MURRAY, JJ.
MURRAY, Judge.
The City of New Orleans appeals a judgment in favor of a retired fireman finding that his need for a pacemaker was compensable under the Worker's Compensation Act. The judgment found the City liable for future medical expenses arising from the fireman's compensable injury. The hearing officer found that the City was arbitrary and capricious in its refusal to pay medical benefits and awarded attorney's fees of $7,500 and a penalty of twelve percent on all past due benefits.
Alphonse Vallelungo, a twenty-two year veteran fireman began experiencing syncopal (fainting) episodes, as early as November of 1989. After suffering a fainting spell on October 6, 1990, Mr. Vallelungo's internist, Dr. Glen Kesler, referred him to Dr. James McKinnie, a cardiologist. On November 2, 1990, Dr. McKinnie examined Mr. Vallelungo and hospitalized him in order for him to undergo a series of tests, including a coronary angiogram that was performed by Dr. Nick Pappas. Mr. Vallelungo, who had only recently quit smoking, was diagnosed as having "sick sinus syndrome", a slowing of the heart's electrical clock. He returned to work for approximately six months after this diagnosis was made.
Mr. Vallelungo was again hospitalized after experiencing a syncopal episode at work on March 21, 1991. While hospitalized, he underwent a cardiac catherization that disclosed evidence of significant coronary artery disease. Dr. McKinnie prescribed several medications, a special diet, and physical rehabilitation. Dr. Pappas and Dr. Kesler requested a series of leaves of absence for Mr. Vallelungo from April 8, 1991 to June 18, 1991, after which time he retired.
Approximately a year after his retirement, Mr. Vallelungo was hospitalized following another fainting episode on June 22, 1992. During this hospitalization, several physicians examined him and concluded that a pacemaker would help his condition. The doctors opined that a pacemaker would regulate the heart beat, which should prevent the fainting episodes. The pacemaker was implanted on June 23, 1992.
Mr. Vallelungo testified that on June 22, 1992 he contacted Ms. Clement, the adjuster at Rosenbush agency who handled his claim for the City. He informed her that he would be undergoing a series of tests and that he might need a pacemaker. At this time Mr. Vallelungo believed that his medical bills were being paid by the City. In August of 1992 he experienced soreness related to the implantation of the pacemaker. He saw Dr. Rudolph Weichert for this problem. Rosenbush paid Dr. Weichert's bill for this examination.
Between September and November of 1992 Mr. Vallelungo received several letters informing him that the bills associated with the procedures performed on June 23, 1992 were past due. Some time in November of 1992 Milton Osborne, Deputy City Attorney, instructed Rosenbush to deny payment on all bills associated with the pacemaker implantation.
*1295 The City concedes that Mr. Vallelungo's initial condition, "sick sinus syndrome", is covered under the Worker's Compensation Act. It, however, contends that the hearing officer erred when he determined that the pacemaker expenses were covered under the Act because: 1) the need for a pacemaker was not related to the sick sinus syndrome; and 2) Mr. Vallelungo was retired when the pacemaker was implanted. The City also argues that the hearing officer erred when he found it to be arbitrary and capricious for denying payment of the bills related to the pacemaker.[1]

COMPENSABILITY
The compensability of heart and lung diseases in fire-fighters is governed by La.Rev. Stat. 33:2581 which provides, in pertinent part:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. Such disease or infirmity shall be presumed to have developed during employment and to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment. (Emphasis added)
As this court has stated:
It is generally accepted that a fireman, as a result of the stress and strain of his work, is predisposed to vascular diseases: our legislature acknowledged this fact in enacting LSA-R.S. 33:2581, which provides, inter alia, that heart disease in a fireman is presumed to have developed during employment if the disability manifests itself after five years of tenure.
Landry v. City of N.O., 266 So.2d 492, 495 (La.App. 4th Cir.1972); Accord Rothell v. Shreveport, 626 So.2d 763, 765 (La.App. 2nd Cir.1993), writ denied, 93-3191 (La. 2/11/94), 634 So.2d 379.
While not specifically part of the Worker's Compensation Act, La.Rev.Stat. Ann. 23:1021, et seq., the Heart and Lung Act consistently has been applied to worker's compensation cases involving fire-fighters. Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4th Cir.1975), writ denied, 401 So.2d 986 (La.1981); McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2nd Cir.1991). Under the statute, once it has been proved by the plaintiff that a covered disease is at issue, the burden shifts to the defendant to prove that the disease was not caused by the fire-fighter's employment. Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4th Cir.1975), writ denied, 329 So.2d 760 (La.1976).
The City argues that the Heart and Lung Act does not apply to Mr. Vallelungo because he was no longer working as a fire-fighter when his heart disease was diagnosed and a pacemaker was ordered.[2]
As long as the disease developed during employment, the presumption created by the Heart and Lung Act applies, even though the disease may not manifest itself until after retirement. Attaway v. City of Natchitoches, 94-813 (La.App. 3rd Cir.1995), 651 So.2d 306. In Attaway, the court found the Heart and Lung Act applied to claimant's heart disease although he did not suffer a heart attack until after he had retired from the fire department. The court concluded that although Mr. Attaway's heart disease manifested itself after retirement, medical evidence supported the finding that the disease had developed over time and was work-related. Id. at 307.
Although Mr. Vallelungo was not diagnosed with heart disease until March of *1296 1991, the doctors found the fainting spells, dating back to 1989, were related to his heart disease. We find the Heart and Lung Act to be applicable to his heart condition because the evidence shows that Mr. Vallelungo's disease developed during his employment with the fire department. Having determined that the Heart and Lung Act is applicable to this claim, the burden shifts to the City to prove the lack of causation between Mr. Vallelungo's heart disease and his employment. "[U]nless affirmative proof is adduced to prove a lack of causation, the presumption requires that the disabled fireman be entitled under the Act." Rothell, 626 So.2d at 766, citing Vincent v. City of N.O., 326 So.2d 401, 403 (La.App. 4th Cir.1975) (on rehearing), writ refused, 329 So.2d 760 (La.1976).
The only evidence offered by the City to rebut the presumption was a letter from a nurse employed by Intracorp, an auditing company. The letter, dated August 31, 1992, stated that Mr. Vallelungo's hospitalization on June 22, 1992 was "non-work related". The letter did not explain how that determination was made. The City did not have Mr. Vallelungo examined by a physician, and offered no expert testimony that his heart condition could not have been contributed to or aggravated by his work as a fire fighter.
Dr. McKinnie, Mr. Vallelungo's treating physician, testified regarding several risk factors associated with heart disease. He acknowledged that Mr. Vallelungo's family history and his history of smoking could have contributed to his heart condition, but could not rule out his occupation as having aggravated or contributed to that condition.
Neither the Heart and Lung Act nor the cases interpreting its application suggest that a claimant must prove that his employment was the only cause of the development of the heart condition. It is sufficient to show that employment contributed, accelerated, or aggravated the condition. Rothell, 626 So.2d at 766.
In Attaway, supra, the court found that the expert for the City of Natchitoches could not exclude the possibility of Mr. Attaway's job as a factor and concluded that the City, therefore, had failed to carry its burden of proving lack of causation.
In McCoy v. City of Shreveport, No. 26,181 (La.App. 2nd Cir. 1/25/95), 649 So.2d 103, a fireman who was diagnosed with sick sinus syndrome that caused syncope was awarded benefits. Mr. McCoy, like Mr. Vallelungo, suffered from fainting spells due to an irregular heart rhythm. Neither the expert called by the City nor by the claimant testified that the Mr. McCoy's heart condition was work-related, but neither could completely rule out his work as a contributing factor. Under this circumstance, the court held that the City had not rebutted the statutory presumption of causation created by La.Rev.Stat.Ann. 33:2581., and found that Mr. McCoy's disability arising from the surgical implant of a pacemaker was compensable under the Workers Compensation and the Heart and Lung Acts. Id. at 108-109.
In McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2nd Cir.1991), doctors found that although claimant smoked, work probably aggravated his condition. It could not be determined whether smoking or breathing smoke on the job had a more significant impact on the development of the condition. The court found for the claimant despite the fact that factors other than work could have contributed to the development of Mr. McKenzie's heart disease. Id. at 1233.
The symptoms of syncope that Mr. Vallelungo developed during his employment were determined to have been caused by his heart condition. The unrebutted evidence establishes that his work as a fire fighter could have contributed to or aggravated his condition. For this reason, we find that the City failed to rebut the statutory presumption. This assignment of error has no merit.

PENALTIES/ATTORNEY FEES
The City of New Orleans argues that the hearing officer erred in finding it arbitrary and capricious for not paying bills incurred for the implantation of Mr. Vallelungo's pacemaker and awarding Mr. Vallelungo 12% in penalties on the past due benefits and $7500 in attorney's fees.
The award of penalties in worker's compensation cases is governed by La.Rev. Stat.Ann. 23:1201(E), which provides that if *1297 an installment of compensation is not paid timely, penalties will attach to the unpaid portion in the amount of twelve percent. Additionally, attorney fees may be awarded against an employer who acted arbitrarily and capriciously in failing to pay benefits within sixty days of receiving written notice. La.Rev.Stat.Ann. 23:1201.2 (West 1981).
Neither penalties nor attorneys fees will be awarded if the employer or its insurer has reasonably controverted the employee's right to such benefits. La.Rev.Stat.Ann. Sec. 23:1201(E) (West 1981).
A claim is reasonably controverted if the employer has sufficient factual and medical information to reasonably counter that presented by the claimant. Rothell, 626 So.2d at 767; McKenzie 585 So.2d at 1237. The decision of whether to award penalties and attorney's fees is a factual determination and should not be disturbed on appeal unless clearly wrong. Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708 (La.App. 4th Cir.1992), writ denied, 609 So.2d 258 (La.1992).
The City asserts that penalties and attorney's fees should not be awarded against it because it had no written notice of the claim. This argument is without merit. Mr. Vallelungo testified that he called Kathy Clement, an adjuster for Rosenbush, when he was hospitalized on June 22, 1992 to inform her that he would be requiring surgery. Ms. Clement testified that shortly after surgery, Rosenbush received a bill relating to the pacemaker surgery. On September, 10, 1992, Ms. Clement turned over the bills and reports to Milton Osborne to determine if payment would be made. By September 10, 1992, the City had received notice of the medical bills for the June 22, 1992 hospitalization from Rosenbush.[3]
The City, relying on Herty v. City of New Orleans, 94-1960 (La.App. 4th Cir. 4/13/95), 654 So.2d 785, contends that it was not arbitrary and capricious in controverting Mr. Vallelungo's claim. It argues that its denial of benefits was reasonable since doctors could not determine the precise cause of Mr. Vallelungo's heart disease. In Herty, the court found that the city was justified in terminating benefits since Mr. Herty, who suffered from a pre-existing degenerative arthritic condition in his ankle, sustained an ankle injury on the job. The doctors could not ascertain whether the problems associated with his ankle were specifically caused by his pre-existing condition or his on-the-job injury.
Herty is easily distinguished as it did not involve a condition covered by the Heart and Lung Act, which provides a rebuttable presumption for certain conditions. This statute consistently has been interpreted as placing a very difficult, almost impossible burden, on the city to prove that a fire fighter's infirmity of the heart could not have resulted from his occupation. McCoy, 649 So.2d at 109. In order to justify termination or denial of benefits under the Act, the City would have had to prove that Mr. Vallelungo's employment could not have caused his heart condition, not that the cause is indeterminate. Rothell, 626 So.2d at 766.
The City had a duty to make reasonable efforts to determine Mr. Vallelungo's precise medical condition prior to refusing to pay benefits. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983); Johnson v. Insurance Co. of North America, 454 So.2d 1113 (La.1984). In Blanque v. City of New Orleans, a panel of this court affirmed an award of penalties and attorney's fees to a police officer who suffered back injuries on the job. Ms. Clement, the representative for Rosenbush handling Mr. Blanque's claim, testified that the decision to discontinue payments was based on a letter from a physician who had never examined the claimant. The Court held that the failure to investigate Mr. Blanque's exact condition coupled with reliance on a opinion of a doctor who had never examined the patient rose to the level of unreasonableness and arbitrariness. Blanque *1298 v. City of New Orleans, 612 So.2d 948 (La.App. 4th Cir.1993).
The basis for denying Mr. Vallelungo's claim is even more tenuous. The City did not have Mr. Vallelungo examined by a physician or make any effort whatsoever to determine if his condition could have been caused by his employment. It based its decision to deny payment of the pacemaker-related bills on a letter by a nurse stating, without explanation, that the condition was not work related.
We find that the City had no factual or medical information that reasonably countered Mr. Vallelungo's claim. The claim was not reasonably controverted, and the trial court did not err when it awarded penalties and attorneys fees to Mr. Vallelungo.

WITNESS FEES/DEPOSITION COSTS
The City argues that the hearing officer erred in ordering it to pay witness fees and deposition costs because it was not required to pay medical benefits under the Worker's Compensation laws. For the reasons discussed above, the City was required to pay medical benefits to Mr. Vallelungo for the expenses associated with the pacemaker. Therefore, this assignment of error has no merit.

FUTURE MEDICAL EXPENSES
In its final assignment of error the City argues that the hearing officer erred in awarding Mr. Vallelungo future medical expenses. A plaintiff in a worker's compensation case is not entitled to a judgment for future medical expenses. Such a claim does not arise until the costs are incurred, but it is reserved to the employee by operation of law. Lester v. Southern Casualty Ins. Co., 466 So.2d 25 (La.1985); Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La.App. 2d Cir.1990).
The judgment of the hearing officer is affirmed in part and reversed in part. Each party is to bear its own costs of this appeal.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] The City also assigned as error the hearing officer's finding that the pacemaker expenses should have been paid through its Worker's Compensation Self-Insurance Benefit Plan, and that payments made by the City shall not be deducted from Mr. Vallelungo's lifetime benefits entitlement in the City's Group Health Self-Insurance Plan. However, the City failed to brief this issue. Rule 2-12.4, Uniform Rules of Louisiana Courts of Appeal states that the court may consider any specification or assignment of error that has not been briefed as abandoned.
[2] Although Mr. Vallelungo did not retire until June of 1991, he had not actually worked since he was diagnosed with coronary artery disease on March 21, 1991.
[3] We note that the decision to deny benefits did not come until November of 1992. Ms. Clement testified that the bill was received by her office in June of 1992 and she was instructed by Milton Osborne in November of 1992 not to pay it. In fact, a charge for Mr. Vallelungo's visit with Dr. Weichert was paid in August of 1992.