688 So.2d 697 (1997)
Gene R. MECHE, Plaintiff-Appellant,
v.
CITY OF CROWLEY FIRE DEPARTMENT, Defendant-Appellee.
No. 96-577.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1997.
Writ Denied April 25, 1997.
*698 James J. Cox, Kevin L. Camel, Lake Charles, for Gene R. Meche.
Christopher R. Philipp, Lafayette, for City of Crowley Fire Dept.
Before DOUCET, C.J., and YELVERTON, THIBODEAUX, DECUIR and AMY, JJ.
AMY, Judge.
This is a worker's compensation case. Plaintiff, Gene Meche, appeals the hearing officer's ruling that he was not entitled to medical expenses under worker's compensation law. For the reasons which follow, we reverse and render judgment in favor of the appellant, Gene Meche.

DISCUSSION OF THE RECORD
On April 15, 1993, while on duty, Gene Meche, who was employed by the City of Crowley Fire Department for a total of 29 years, began feeling pain in his chest, left shoulder, and jaw. In the course of treatment, Meche was examined by several cardiologists, and he was ultimately diagnosed with a condition commonly referred to as "sick sinus syndrome." The recommended course of treatment for his "sick sinus syndrome" was the implantation of a permanent pacemaker. On June 16, 1993, Meche had a "metronic" pacemaker attached to the right ventricle and right atrium of his heart. The City of Crowley paid Meche full salary during the time that he was unable to work. However, on November 18, 1993, Risk Management Inc., the defendant's worker's compensation carrier, notified Meche that continued coverage for worker's compensation benefits and medical expenses was denied because "Sic[k] Sinus Syndrome has nothing to do with a d[i]sease or infirmity of the heart." Subsequently, Meche filed a claim for benefits against the defendant, requesting reimbursement for medical bills incurred for the installation of the pacemaker.
A hearing on the merits was held on December 6, 1995. At the start of the hearing, the parties stipulated that, subsequent to defendant's denial of reimbursement of medical expenses and the filing of the claim for compensation, all medical expenses related to Meche's condition had been paid with the exception of the fee charged by Dr. Charles B. Woodard, a consulting cardiologist.
On February 29, 1996, the hearing officer ruled that Meche's condition was not workrelated, and, therefore, the City of Crowley was not obligated to reimburse the employee for medical expenses incurred as a result. In reaching this decision, the hearing officer determined that "sick sinus syndrome" was not a disease or infirmity of the heart which would render La.R.S. 33:2581 (commonly referred to as the Heart and Lung Act) applicable. As a result, the Heart and Lung Act's *699 statutorily created prima facie presumption, which provided that a disease or infirmity of the heart or lungs suffered by a firefighter after the first five years of service was workrelated, was not applied. Accordingly, the hearing officer determined that Meche, without the benefit of the presumption, was not entitled to benefits under worker's compensation law because he had not proven that his condition, which was of unknown etiology, was causally related to his employment.
Meche appeals from that ruling and asserts that the hearing officer erred in finding that "sick sinus syndrome" was not a disease or infirmity of the heart, and, as such, he was entitled to the prima facie presumption that his condition was work-related, as provided for in La.R.S. 33:2581. Accordingly, Meche contends that he was entitled to benefits under worker's compensation law[1] because his heart condition is deemed to be workrelated, unless the employer is able to prove that the condition is not work-related.

LAW
Our initial inquiry requires us to determine if the hearing officer was manifestly erroneous in her determination that "sick sinus syndrome" was not a disease or infirmity of the heart.
The compensability of a heart disease or infirmity in firefighters is determined pursuant to the Heart and Lung Act, La.R.S. 33:2581, which provides as follows:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
The Louisiana Legislature, by enacting the Heart and Lung Act, established the prima facie presumption that a disease or infirmity of the heart manifesting itself after the first five years of employment: (1) developed during employment; and, (2) was caused or resulted from the nature of the work performed. Therefore, when the above preconditions are met, the burden of proof shifts to the employer to show that the claimant's heart disease or infirmity was not caused by his employment as a fireman. Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4 Cir.1975), writ denied, 329 So.2d 760 (La.1976). The fourth circuit, in Vincent, stated:
By providing that the "disease is presumed prima facie, to have developed during the employment," the legislature did, we believe, effectively shift the burden of proof to the employer who became obliged to prove the lack of causation between the disease and the employment. This shifting of the burden of proof obviously imposes an onerous task upon the employer, but this was, we believe, intended by the legislature. Our reading of the statute convinces us that a rebuttable presumption exists that the nature of the work caused the disease. Accordingly, the employer bears the difficult burden of proving otherwise and unless affirmative proof is adduced to prove a lack of causation which is, admittedly, very difficult, then the presumption requires that the disabled fireman be entitled to coverage under the Act.
Id. at 403.
Additionally, the fourth circuit, in that case, noted on rehearing that "[t]hough [the employer's burden] is termed rebuttable it is, in fact, almost impossible to rebut. The City is placed in the difficult position of being obliged to prove a negativei.e., [the employee's] heart disability could not have resulted from his service as a firefighter." Id. *700 at 405. See also Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96); 673 So.2d 1292; McCoy v. City of Shreveport Fire Department, 26,181 (La.App. 2 Cir. 1/25/95); 649 So.2d 103.
Although the Heart and Lung Act is not specifically incorporated within the Worker's Compensation Act, La.R.S. 23:1021, et seq., the courts have found it applicable to worker's compensation cases. Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4 Cir.), writ denied, 401 So.2d 986 (La.1981). Once a condition is found to exist as defined in La.R.S. 33:2581, the applicability of Title 23 of the Louisiana Revised Statutes is resolved. Questions attendant to compensation are then decided pursuant to La.R.S. 23:1021 et seq.
Gene Meche was employed by the City of Crowley Fire Department as a fireman. Meche's classification at the time of trial was that of a shift captain. Meche testified that, as a shift captain, his main concern was to ensure that the firemen under his control and supervision respond and function as a team. On April 15, 1993, while on duty sweeping the floor of the fire station, Meche, who is also a CPR instructor and licensed practical nurse (LPN), began feeling pain which alerted him to what he thought was a possible angina. Meche testified that he had a paramedic from Acadian Ambulance run an EKG strip on his heart. Meche further testified that the EKG showed that he was having premature ventricular contractions. Meche asked Captain Lewis, an off-duty fire captain, to drive him to American Legion Hospital in Crowley to seek emergency treatment.
Upon arrival at the American Legion Hospital emergency room, a second EKG was run on Meche's heart which confirmed the results of the first EKG. After reviewing the results of the EKG, the attending physician, Dr. Katira, suspected that Meche had right coronary artery disease. Consistent with Dr. Katira's orders, Meche was then transferred to Our Lady of Lourdes Regional Medical Center in Lafayette for further investigation by a cardiologist, Dr. Mehmood M. Patel.
Meche was immediately admitted into Lourdes to undergo diagnostic tests to determine the origin of his chest pain. After an initial examination, Dr. Patel suspected that Meche had unstable angina or "sick sinus syndrome." Meche underwent a right and left heart catheterization which showed all coronaries to be normal and ruled out interior myocardial infarction. Dr. Patel also performed a test to measure Meche's sinus mode recovery time and had him wear a Holter monitor[2] for 24-hours. Dr. Patel testified that the Holter monitor results revealed a "normal sinus bradycardia, with frequent 2.4 second pauses, with rate dropping down into twenties, with some multiform PVC's and rare couplets with rare atrial premature contractions, with evidence of positive AV block, suggestive of sick sinus syndrome." Dr. Patel's final diagnosis was that Meche was suffering from "sick sinus syndrome" and recommended the implantation of a permanent pacemaker. When Dr. Patel was asked to describe "sick sinus syndrome," the following colloquy took place:
Q. What is sick sinus syndrome?
A. God has given us a pacemaker in the heart, which controls the heart rhythm and keeps in a reasonable rate. And some people has (sic) abnormalities of that sinus. That is called sick sinus.
Q. Is that something that you are born with, or what causes that?
A. It'smost of the etiology is unknown. There are certain people that are more predisposing to that type of sick sinus syndrome.
Q. What kind of people are predisposed to it?
A. Heredity might have something to do with it.
Q. So if your mother and father have it, there's a chance you may have it?

*701 A. That's correct. And some people do spontaneously. There's no real genetic tracing we can cause in certain people. And it might be just spontaneously.
* * * * * *
Q. Are there any risk factors for it, like there are for heart disease, like cardiovascular disease
* * * * * *
A. No. There's no [factors]we don't find any risk factors for the sick sinus syndrome.
Q. So to recapitulate what you've said, the basis etiology of this is unknown, and the most you can say is that some people are predisposed to it genetically?
A. Genetically, right.
Q. In the case of Mr. Russell Meche, did he tell you about any family history of this kind of problem?
A. No, he did not. There was no contribution by the family history he had.
Q. So he would fall into the category of just a spontaneous
A. Idiopathic spontaneous. Idiopathic, without any etiology, and spontaneous, which is mostly the most common things we find.
Dr. Patel further testified that this type of bradycardia comes "from the focus in the heart, which is normal ... [b]ut this normal focus slows down to a certain extent off and on and slows down, where the rate is dropping down into twenties." Lastly, Dr. Patel testified that "sick sinus syndrome" is not a problem of the central nervous system, but instead, more "indicative of the nervous tissues of the heart" which are not functioning properly.
Dr. F. Earl Dixon, a cardiologist who was appointed as an independent medical examiner, questioned the diagnosis of "sick sinus syndrome." However, during further questioning, Dr. Dixon, when examining the two 24 hour Holter monitor results, noted abnormalities in the results. Furthermore, Dr. Dixon commented that the test results from the second Holter monitor, which were being used to formulate his opinion, were "very edited." Dr. Dixon further clarified that he could not, "based on the information [he reviewed], exclude the possibility of a conduction problem." Responding to questions regarding his opinion of Meche's condition, Dr. Dixon states:
From the information that we've got, it would appear to me that he has a structurally normal heart. And by that, I mean he has no blockages. He has a strong heart muscle. He has no weakness of the heart muscle. He has no scar tissue on his heart muscle like a previous heart attack would cause. And he has no heart valve problems.
Independent of all that, people can still have problems with the electrical system of the heart, and that's what I mean by conduction system, and since sinus syndrome falls within that realm. So people can have significant electrical problems without structural problems.
Dr. Charles B. Woodard, examined Meche and agreed with Dr. Patel's original diagnosis of "sick sinus syndrome." When asked about the relationship between "sick sinus syndrome" and Meche's employment as a fireman, Dr. Woodard testified that Meche did not display any of the specific medical causes for the condition, and further testified that, he thinks that "his disease is `idiopathic,' meaning that we do not know the cause of the disease."
In her written reasons for judgment, the hearing officer determined that, since the medical records supported that there was "no anatomical dysfunction of Meche's heart[,]" the Heart and Lung Act was not applicable. With this conclusion, we disagree. As explained by Dr. Dixon and Dr. Patel, we conclude that Meche, although there was nothing anatomically wrong with his heart, suffered from an electrical problem in the conducting tissues of the heart. Therefore, we find "sick sinus syndrome" to be an infirmity of the heart contemplated by La.R.S. 33:2581. In this regard, the hearing officer was clearly wrong.
Therefore, since we conclude that "sick sinus syndrome" is clearly a covered *702 infirmity of the heart, the burden shifts to the defendant to prove by affirmative evidence that this condition could not have been caused or aggravated by claimant's work as a fireman. Vincent, 326 So.2d 401.
In the case sub judice, the City of Crowley presented the testimony of several cardiologists who stated that Meche's employment as a fireman had not contributed to his condition of "sick sinus syndrome." However, as stated previously, these same cardiologists testified that Meche's condition was idiopathic, or in other words, from a cause unknown. Additionally, although Dr. Dixon does not discuss the idiopathic nature of Meche's condition, he does state that he doesn't "know a mechanism by which being a fire fighter (sic) would cause electrical problems" such as "sick sinus syndrome." As such, we conclude that the testimony of the cardiologists regarding causation is equivocal. Given the above evidence, only one conclusion is possible: that the employer has not sustained its burden of proving by affirmative evidence that Meche's employment as a fireman could not have contributed to his condition. Accordingly, Meche, a 29 year veteran of the City of Crowley Fire Department, was entitled to the statutory presumption that his heart condition was work-related as provided for in the Heart and Lung Act.
In sum, in reviewing the record in its entirety, we find the evidence does not reasonably support the hearing officer's conclusion that Meche's condition was not a disease or infirmity of the heart which would have rendered the Heart and Lung Act inapplicable. Also, after application of the appropriate standard, we find the evidence in this record legally insufficient to rebut the presumption found in the Heart and Lung Act. We recognize that, due to the idiopathic nature of "sick sinus syndrome" in the given case, the defendant was faced with an almost irrebuttable presumption that Meche's condition was work-related; however, this was the obvious intention of the legislature when it drafted the Heart and Lung Act. Therefore, the hearing officer's decision must be reversed.

DECREE
Accordingly, we reverse the hearing officer's decision to deny claimant coverage of his medical expenses under worker's compensation law. The employer, the City of Crowley Fire Department, has not sustained the burden of rebutting the prima facie presumptions provided for in the Heart and Lung Act, La.R.S. 33:2581. As such, the employee's condition is deemed to be workrelated. Accordingly, the employer shall pay all medical expenses incurred by the employee for treatment of his condition. All costs of this appeal are assessed to the defendant-appellee, the City of Crowley Fire Department.
REVERSED AND RENDERED.
DOUCET, C.J., concurs and assigns written reasons.
DOUCET, Judge, concurring.
I respectfully concur with the majority herein. The majority correctly found that a two-part analysis must be applied where a claimant seeks to have the Heart and Lung Act apply. First, the burden is on the claimant to show that he has a "disease or infirmity of the heart." Once this is shown, the Act applies and the burden shifts to the employer. The question of whether a claimant has shown that he has a "disease or infirmity of the heart" is a factual one. The determination of the hearing officer in this regard should not be overturned absent manifest error. However, I agree that, in this case, the hearing officer was manifestly erroneous in finding that the claimant had not carried his burden. The claimant has shown that he had a disease or infirmity of the heart. Only Dr. Patel addressed this directly, stating that the claimant's problems arise out of malfunctioning of the conduction or nervous tissues of the heart. Dr. Dixon testified that the problem was electrical rather than anatomical. However, he did not state whether the electrical difficulty arises in the heart or elsewhere.
Because the claimant established that he was suffering from a disease or infirmity of the heart, the Heart and Lung Act, La.R.S. 33:2581, applies to establish a prima facie *703 presumption that the problem developed during, and was caused by, his employment as a firefighter. Therefore, the burden of proof shifts to the employer to rebut this presumption. However, I disagree with the majority as to the effect of a prima facie presumption and as to the type of proof needed to overcome such a presumption. I do not believe that the legislature intended to create a presumption of causation which is irrebuttable or virtually impossible to rebut. A review of the jurisprudence, both state and federal has convinced me that a prima facie presumption does no more than establish a prima facie case for the party in whose favor the presumption acts. Therefore, the presumption may be rebutted as may any prima facie case. I have found no support for a conclusion that a prima facie presumption can be considered virtually impossible to rebut. A prima facie presumption "imposes on the party against whom it is directed the burden of going forward with substantial evidence to rebut or meet the presumption." Pennzoil Company, et al. v. Federal Energy Regulatory Commission, 789 F.2d 1128, n. 21 (5th Cir.1986). Therefore, I disagree with the conclusion implicit in the majorities finding: that the employer when faced with the presumption established by the Heart and Lung Act must present evidence that conclusively establishes the causation of the heart problem. Rather, the employer must go forward with substantial evidence to show that employment was not the cause. Since the hearing officer did not reach the issue of whether the employer had rebutted the presumption of causation, we must conduct a de novo review of this issue. Given the evidence before us, I agree that the employer failed to carry its burden of overcoming the prima facie presumption of causation. Accordingly, I will concur in the result reached by the majority.
NOTES
[1] See La.R.S. 23:1021 et seq.
[2] Dr. Dixon describes a Holter monitor as follows:

A Holter monitor is basically a continuous rhythm recording, usually, for a 24-hour period of time. The patient will wear a small tape recorder device about the size of a Walkman. It's connected to some EKG leads, and basically every single heartbeat in a 24-hour period is report [sic] consecutively.