hWALTZER, Judge.
A firefighter employed by the city of New Orleans experienced chest pains on the job, went to the hospital, and suffered a stroke. Murphy Arcenaux seeks worker’s compensation for his coronary artery disease.[1]
FACTS
Arcenaux worked for the city from 1971 until his retirement in 1996. He worked as a firefighter for twenty-five years. In January 1996, Arcenaux began experiencing various symptoms. He sought medical treatment from Lakeland Medical Center and was admitted after an episode of nausea and vomiting. On the DISCHARGE SUMMARY, dated 26 January 1996, the diagnosis included a right pontine stroke, accompanying left arm incoordination and moderate slurred speech but no swallowing difficulties, hypertension, diabetes, and an old inferior MI. However,' on his claims form for worker’s compensation benefits, Arcenaux stated that he initially had chest pain and a stroke and developed heart problems which continue to prevent him from working.
|2In July 1996, plaintiff sought treatment from Dr. Bruce Iteld, cardiologist, with chest discomfort. Dr. Iteld placed a stent in the left anterior descending artery. Dr. Iteld continued to treat the plaintiff for angina, chest pain, although he believed the stent procedure was successful. When asked whether both physical stress and psychological stress caused Arcenaux’s cardiovascular problems, Dr. Iteld testified that he did not believe either physical stress or psychological stress caused the plaintiffs heart disease. Dr. Iteld testified that the heart disease was a result of the diabetes. However, he testified that any stress that’s significant to the claimant might aggravate the angina, chest pain.
On 19 August 1996, Dr. Iteld sent the claim representative for the city a letter, in which he stated,
Since the above postoperative evaluation the patient continues to have chest discomfort with low to moderate levels of activity. In view of this situation, I feel that the patient should not return to work unless there is a significant change in his symptoms. I feel due to the type of vocational stress and physical demands required that it would be dangerous for this patient to resume these responsibilities. I also feel that it may be dangerous to fellow workers.
In his testimony Dr. Iteld further explained that,
If he has to do anything like to go into a building or get on a .ladder or is in the middle of something and starts developing the pain and there’s no way of turning back without doing a significant amount of activity, then I think it may be dangerous for him. He may become a weak link in a chain and then create possible harm to himself or to somebody else if this episode occurs while he’s in the heat of an event.
On 6 August 1996, Dr. Jack P. Ruli, internist, informed the city’s fire department after reviewing some of plaintiffs medical records that,
Operator Arseneaux [sic] has two serious medical problems. Specifically, he sustained a right cerebral pontine infarction resulting in loss of balance and strength involving his left arm and leg. In addition, he has ischemic heart disease with angina pectoris which is still symptomatic.
|3Pr. Ruli recommended that the claimant be considered totally and permanently disabled from engaging in fire duty. After receipt of Dr. Ruli’s opinion, the city’s fire department permitted plaintiff to retire on disability status. In his testimony, Dr. Ruli stated,
*1058 I don’t think that fire duty causes heart disease. I think if a man has heart disease, he’s going to find that he’s putting himself at an increased risk and, of course, the unfortunate thing is that a lot of times we don’t know who has silent ischemia, silent heart disease.
When questioned about whether the tasks of fire fighting causes heart problems, Dr. Ruli further testified:
Specifically, I would have to give you, if a person has narrowed blood vessels and he doesn’t know it, say he gets indigestion constantly, what he calls indigestion, and he goes into a fire, all right, the heart rate is going to go much faster which will increase the demand for oxygen. He’s going to be subjected to physical stress which increases the demand for oxygen and then, of course, the excessive heat is a tremendous precipitating factor because that increases metabolic rate and everything.
So that person will increase his risk of developing a heart attack if he has underlying disease. I don’t believe that causes the disease. I think it’s there and you don’t know it. I think you’re putting yourself at an increased risk.
When questioned further about factors contributing to plaintiffs vascular disease, Dr. Ruli responded “if your [sic] hypertensive and a diabetic and you have a family history, you’re a dead setup for getting vascular disease. Those are really horrible risk factors.” Furthermore, considering these factors in evaluating whether fire fighting caused or contributed to plaintiffs heart problems, Dr. Ruli responded that the job “[d]id not cause his disease because diabetes and hypertension are mostly hereditary and genetically predisposed illnesses.”
Arcenaux received worker’s compensation after the episode in January 1996. The city stopped paying these benefits on 7 December 1996, after they received Dr. Charles Moore’s report dated 14 November 1996. Dr. Moore, a ^cardiologist hired by the city to evaluate plaintiffs condition, stated “from the point of view of the heart, I see no problem with his working. From the point of view of his other medical problems, including diabetes, an old cerebral vascular accident and obesity, I don’t feel confident to make a decision regarding work and his job.”
FIRST ASSIGNMENT OF ERROR: The trial court erred by determining that the claimant’s job caused the disabling disease.
The city argues that the evidence proves that claimant’s job, fire fighting, did not cause the coronary artery disease afflicting him. However, the city must overcome the presumption that the job caused the heart disease.
La.R.S. 33:2581 provides:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
(Emphasis added.)
Moreover, our review of findings of fact is limited to a determination of whether the record establishes that a reasonable factual basis does not exist for the finding and that the finding is clearly wrong. Lewis v. State, Through Dep. of Transp. and Dev., 94-2370 (La.4/21/95); 654 So.2d 311, 314. Although we |5accord deference to the fact-finder, we are cognizant of our constitutional duty to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s finding was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department *1059 Ambulance Service, 93-3099 (La.7/5/94); 639 So.2d 216, 222; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742, 745. This rule of review of facts, requiring manifest error before we reverse, applies to findings by the trial court in worker’s compensation cases. Bynum v. Capitol City Press, Inc., 95-1395 (La.7/2/96); 676 So.2d 582, 586. Thus, on appeal the city must overcome both the presumption and the rule of manifest error.
To rebut the presumption, “The city must prove that fire service ‘did not precipitate, accelerate, aggravate, or otherwise cause or contribute to’ the heart condition.” Pfister v. City of New Orleans, 95-1750 (La.App. 4 Cir. 9/18/96); 681 So.2d 426, 430; quoting Rothell v. City of Shreveport, 25,182 (La.App. 2 Cir. 10/27/93), 626 So.2d 763, 767. “The presumption is almost impossible to rebut.” Id.
Although we agree with the city that substantial evidence exists in the record to rebut the presumption that fire fighting caused claimant’s coronary artery disease, we are equally convinced that the record is replete with testimony from the treating cardiologist, Dr. Iteld, that fire fighting aggravates claimant’s condition. Dr. Iteld repeatedly explained that he does not believe the job caused claimant’s heart disease, but he does believe that the disease disables Areenaux from fire fighting because any stress can aggravate the angina, chest pain, associated with the coronary artery disease. Furthermore, Dr. Ruli agreed with Dr. Iteld’s ^assessments and conclusions that the job did not cause the disease but that stress, including stress associated with fire fighting, aggravates claimant’s heart problems.
Although we recognize the difficult burden born by the city, we are convinced after a review of the entire record that the trial court did not err by finding that claimant’s job, fire fighting, “precipitatefd], accelerate[d], aggravated], or otherwise cause[d] or contributed] to” Arcenaux’s heart condition. Therefore, we affirm the finding of the trial court that fire fighting caused the claimant’s infirmity of the heart.
SECOND ASSIGNMENT OF ERROR: The trial court erred by finding that the city acted arbitrarily and capriciously when it discontinued claimant’s benefits in November 1996, and by awarding $8,000.00 in attorney’s fees.
The city argues that the trial court erred by awarding attorney’s fees. The trial court concluded that “[claimant is entitled to penalties in the maximum amount of $2,000.00 and attorney fees of $8,000.00 due to defendant’s failure to controvert claimant’s entitlement of benefits as well as their decision to terminate claimant’s benefits, which this court finds was done without reasonable cause and in an arbitrary and capricious manner.” When discontinuance of compensation benefits is found “to be arbitrary, capricious or without probable cause” the employer or insurer “shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.” La.R.S. 23:1201.2. We review the evidence in the record for such awards for manifest error. Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96); 673 So.2d 1292, 1297.
Dr. Moore, a cardiologist, evaluated the claimant’s condition and reported his conclusions to the city in November 1996. Dr. Moore reported that
17from the point of view of the heart, I see no problem with his working. From the point of view of his other medical problems, including diabetes, an old cerebral vascular accident and obesity, I don’t feel confident to make a decision regarding work and his job.
Relying on this opinion, the city terminated benefits. However, the claimant’s treating cardiologist, Dr. Iteld, informed the city’s agent in August 1996, that
Since the above postoperative evaluation the patient continues to have chest discomfort with low to moderate levels of activity. In view of this situation, I feel that the patient should not return to work unless there is a significant change in his symptoms. I feel due to the type of vocational stress and physical demands required that it would be dangerous for this patient to resume these responsibilities. I also feel *1060 that it may be dangerous to fellow workers.
(Emphasis added.)
The record contains no other evidence that the city acted arbitrarily or capriciously by terminating benefits. However, the treating physician’s opinion deserves more consideration, in light of Dr. Moore’s failure to conclude whether or not Areenaux is disabled in “view of his other medical problems.” Thus, the record does not persuade us that the trial court erred by determining that the city acted arbitrarily and capriciously when it denied Areenaux benefits after Dr. Moore’s report.
However, the city further argues that the trial court awarded an excessive amount of attorney’s fees. The trial court awarded $8,000.00 in attorney’s fees. The record does not contain any evidence on the issue of attorney’s fees. Thus, we reverse the award of attorney’s fees in the amount of $8,000.00. Because we are unable to determine from the record an appropriate amount for this award, we must remand. Therefore, we remand the ease to the trial court for a determination of a “reasonable” award, supported by appropriate evidence.
| «CONCLUSION
For the above reasons, we affirm the factual findings of the trial court. However, we reverse the award of attorney’s fees in the amount of $8,000.00 and remand the matter to the trial court for a determination of a reasonable amount for attorney’s fees based on appropriate evidence.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. On appeal, Arcenaux asks for attorney’s fees and costs for defending this appeal under La. C.C.P. art. 2164. However, because he did not answer the appeal, we will not consider this demand. La.C.C.P. art. 2133. HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693 (La.App. 4 Cir. 4/23/97); 693 So.2d 835, 847; writ denied by 97-1353 (La.9/5/97); 700 So.2d 513.