PAUL A. BONIN, Judge.
_JjThe late Raleigh Richards worked for more than thirty-two years in the classified fire service of St. Bernard Parish. Within three years of his retirement, he died of coronary artery disease. His widow, Elizabeth Richards, filed a claim with the Office of Workers’ Compensation for death benefits, including weekly indemnity payments and funeral expenses. The parish government contested the claim on several grounds.
After a trial on the merits, the workers’ compensation judge decided that Mrs. Richards was not entitled to death benefits because he found that her husband’s coronary artery disease was not caused by his work. Arguing that the parish government did not overcome the statutory presumption of causation provided by the Heart and Lung Act (La. R.S. 33:2581), Mrs. Richards appeals the decision of the WCJ.
Upon our review for manifest error, we find that the WCJ was clearly wrong in finding that the parish government’s evidence ruled out Mr. Richards’ firefighting duties as a cause of his death from coronary artery disease. We thus preverse the decision of the WCJ and find that Mrs. Richards is entitled to the weekly indemnity benefits due her as a widow, with legal interest thereon from the due date of each installment commencing with the date of Mr. Richards’ death, as well as the burial expenses, and render judgment accordingly.
We explain our decision in the Parts which follow.
I
In this Part, we first give an overview of the Heart and Lung Act, especially as it may be compared and contrasted with other statutory provisions. Then we address how the intermediate appellate courts, and especially our court, have applied the presumptions provided for in the Act.
A
“Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment.” La. R.S. SS^Sl.[1] And the Act continues, “[t]he employee affected, or his survivors, shall be entitled to all rights *527 and benefits as granted by the laws of the state of Louisiana |sto which one suffering an occupational disease is entitled as service connected in the line of duty ...” Id.
From these opening provisions of the Act, we note first that by its own terms the Act applies exclusively to those employed in the classified fire service. And for those exclusive beneficiaries of the Act, heart disease will be treated as an occupational disease under the workers’ compensation law. When a disease is classified as an occupational disease that is covered under the workers’ compensation law, the claimant is relieved of the burden of establishing “personal injury by accident arising out of and in the course and scope of his employment.” See La. R.S. 28:1031.1 A; see also La. R.S. 28:1021(1) and 1032 A(l)(a).
Under the general workers’ compensation provisions, heart disease is not an occupational disease. See La. R.S. 23:1031.1 B (“heart-related and perivascu-lar disease are specifically excluded from the classification of an occupational disease”). In order for heart-related or peri-vascular disease to be compensable under the general workers’ compensation law, a claimant must demonstrate by clear and convincing evidence that (1) the physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and (2) the physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. See La. R.S. 23:1021(8)(e). We have noted that “[i]t is ... more difficult for a worker to prove that heart-related and perivascular injuries suffered on the job are |4compensable, and a worker seeking benefits for an employment-related heart attack must meet a more restrictive statutory test with an elevated burden of proof.” Simmons v. Task Force Staffing Services, Inc., 09-1384, p. 6 (La.App. 4 Cir. 1/13/10), 30 So.3d 223, 226, citing to Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752, 754-755.
Thus, we can readily see that The Heart and Lung Act affords extraordinarily special treatment to firefighters in the classified fire service. For them alone is heart-related disease classified as an occupational disease. And by classifying the heart-related disease of a firefighter in the classified fire service as an occupational disease, such firefighter is not relegated to the elevated burden of proof by clear and convincing evidence.
But the Act provides a further benefit to firefighters whenever the heart-related disease “is manifested after the first five years of employment.” La. R.S. 33:2581. In the ordinary occupational disease claim, the claimant must prove that the disease is peculiar to the particular occupation or employment in which the employee is exposed to such disease. See La. R.S. 23:1031.1 B; see also Evans v. Hampton Inn, 08-1195 (La.App. 3 Cir. 3/4/09), 6 So.3d 380. The further benefit to the five-year firefighting veteran is that the heart-related disease “shall be presumed, prima facie, to have developed during the employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed.” La. R.S. 33:2581. Notably, this further benefit of the presumptions does not extend to volunteer firefighters. See La. R.S. 23:1036 1(1) |5(“The presumption under R.S. 33:2581 relating to the development of heart and lung disease during fire service shall not be available to volunteer members claiming benefits under this Section.”)
*528 Thus, a five-year veteran employee in the classified fire service is not only entitled to workers’ compensation benefits by the Act’s treatment of his heart-related disease as an occupational disease, but is also entitled to a presumption that such heart-related disease developed during his employment and was caused by or resulted from the nature of the work performed. It is not disputed that the late Mr. Richards, who worked for more than thirty-two years in the classified fire service, is entitled to the presumption.
B
We turn now to a discussion of how we, and the other Louisiana appellate courts, have consistently applied the presumption.
In applying a predecessor version of La. R.S. 33:2581, we stated that the Legislature’s provision of the presumption “effectively shift[edj the burden of proof to the employer who became obliged to prove the lack of causation between the disease and the employment.”[2] Vincent v. City of New Orleans, 326 So.2d 401, 403 (La.App. 4th Cir.1975). We went on to state that “[t]his shifting of the burden of proof obviously imposes an onerous task upon the employer, but this was, we believe, intended by the legislature.” Id. The burden of affirmatively [ (¡proving that the heart-related disease is not causally related is “admittedly, very difficult.” Id. We even noted that the employer had failed to call a physician, which we described as “understandable since the statutory burden on the City in this instance essentially required it to prove a negative — an almost impossible ev-identiary task.” Id., n. 2.
We recognized, and essentially reiterated, on rehearing that “the force of the presumption” in favor of the employee is such that although “it is termed rebuttable it is, in fact, almost impossible to rebut.” Vincent v. City of New Orleans, 326 So.2d at 405 (on rehearing). The employer “is placed in the difficult position of being obliged to prove a negative,” which is that the heart-related disease “could not have resulted from his service as a firefighter.” Id. But we concluded “that the statute cannot fairly be construed in any other way.” Id.
We found that the employer was unable to overcome the Act’s presumption despite eminent medical opinions that arteriosclerosis develops at any early age, is not unusual in someone with a history of hypertension, cigarette smoking and obesity, and that it is not related to any occupation. See Saling v. City of New Orleans, 398 So.2d 1205, 1207-1208 (La.App. 4th Cir. 1981). But the medical opinions did not rule out “that a job or life style could be an aggravating factor in an existing disease.” Id. at 1208. Thus, we found the physicians’ opinions “insufficient to overcome the presumption.” Id.
Again, we found that medical testimony which points to causes of heart-related disease other than firefighting but cannot “rule out his occupation as having 17aggravated or contributed to that condition” is insufficient to overcome the presumption. See Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96), 673 So.2d 1292, 1296. We stated that the Heart and Lung Act does not require that the firefighting employment be “the only cause” of the heart-related disease; it is sufficient that the employment “contributed, accelerated, or aggravated the condition.” Id. Thus, unless the evidence rules *529 out the proposition that work as a firefighter could not have contributed to or aggravated the disease, the presumption has not been rebutted. Id.
We later emphasized that in order to rebut the presumption of the Act, the employer must prove that the fire service did not precipitate, accelerate, aggravate, or otherwise cause or contribute to the heart-disease. Arsenaux v. City of New Orleans, 98-1405 (La.App. 4 Cir. 12/28/98), 729 So.2d 1056, 1059. We also recognized that the employer bears a “difficult burden.” Id. In Arsenaux, the medical evidence was clear that the firefighter’s coronary artery disease was not “caused” by the firefighter’s job, but there was evidence that it aggravated the condition. Id.
Our court is not alone in applying the Act’s presumption in this manner. The Second Circuit, finding that the administrative hearing officer had erred as a matter of law in properly applying the Act’s presumption, reversed the decision to deny benefits to a retired firefighter who suffered a heart attack where “[t]he evidence presented to the hearing officer is very detailed about the other factors, major and minor, which did or could have contributed to Rothell’s heart attack.” Rothell v. City of Shreveport, 626 So.2d 768, 767 (La. App. 2nd Cir.1993). The court explained that “[hjowever, there is no evidence which states that the employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to Rothell’s atherosclerosis which caused the heart attack.” Id. (emphasis in original). It noted that “[ejven Dr. Brown agreed that he could not exclude stress as having played some role in this case.” Id.
The Second Circuit also reversed an administrative hearing officer’s denial of benefits in a case where “the medical opinion (more probably than not), that generally negates that the fireman’s work was the cause of the heart disability, is tempered by acknowledgments, agreements, or concessions that the work may have been a cause, even though remote, or possibly a contributing factor.” McCoy v. City of Shreveport Fire Dept., 26,181, p. 11 (La. App. 2 Cir. 1/25/95), 649 So.2d 103, 108 (emphasis in original). . Because the Act requires the employer to prove that the heart-disease “could not have resulted from his service as a fireman,” the Act’s presumption is not overcome when the physician is unable or unwilling to totally rule out that the heart-disease is related to the firefighter’s job. Id. at p. 12, 649 So.2d at 108-109.[3]
The Third Circuit, too, found that the unrebutted medical evidence of several cardiologists that the firefighter’s work had not contributed to his condition was insufficient to overcome the Act’s presumption because the same physicians testified that the cause of the firefighter’s condition was “unknown.” See Meche v. City of Crowley Fire Dept., 96-577, p. 8 (La.App. 3 Cir. 2/12/97), 688 So.2d 697, 702. The court characterized the cardiologists’ testimony as “equivocal,” concluded that the employer had not sustained its burden of proving by affirmative evidence that the employment had not contributed to the firefighter’s condition, and reversed. Id. The court expressed the view that the presumption is “almost irrebuttable,” but that “this was the obvious intention of the legislature when it drafted the Heart and Lung Act.” Id. at p. 9, 688 So.2d at 702.
When the physician’s “testimony does not exclude the possibility that plaintiffs disease developed over a period of years and does not clearly establish that *530 plaintiffs employment had nothing to do with the development of his heart disease,” the employer fails in its burden to rebut the Act’s presumption. Attaway v. City of Natchitoches, 94-813, pp. 2-3 (La.App. 3 Cir. 2/1/95), 651 So.2d 306, 308.[4] See also Devall v. Baton Rouge Fire Dept., 07-0156 (La.App. 1 Cir. 11/2/07), 979 So.2d 500.
Thus, the Act’s presumption shall be applied unless the employer with affirmative evidence establishes that the heart-related disease is neither caused by, nor results from, employment as a firefighter. Medical evidence, however, which does not rule out that work as a firefighter could not have contributed to or aggravated the heart-disease, or which is tempered by acknowledgments, agreements, or concessions that the work may have been a cause, even though | inremote, or possibly a contributing factor of the heart-disease, or which is otherwise equivocal, is not affirmative evidence sufficient to overcome the Act’s presumption.
II
In this Part, we first address the standard by which we review the decision of the WCJ, then consider the medical evidence before the WCJ, and finally conclude that the WCJ was clearly wrong in finding that Mr. Richards’ coronary artery disease was not caused by, or resulted from, his employment as a firefighter.
A
We review findings of fact by a WCJ under the clearly wrong standard. See Dean v. Southmark Construction, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. We may only reverse the findings of the WCJ when they are found to be clearly wrong in light of the record viewed in its entirety. Id. This standard applies even in those workers’ compensation cases where, as here, “the evidence before the trier of fact consists solely of written reports, records, and depositions.” Fite v. Louisiana Title Co., 02-2607, p. 3 (La.6/27/03), 852 So.2d 983, 985.
B
Mr. Richards’ career covered 32 years, during which he served as a firefighter, captain, district chief, and deputy chief. His duties in all of those positions involved him in fire suppression and rescue activities at refineries and chemical plants, among other locations.
| nDuring his active employment with the parish government, Mr. Richards received evidence of heart damage from hypertension as a result of an electrocardiogram performed on February 19, 2003. The test revealed an enlargement of the right ventricle and left atrium with thickening of the heart muscle known as left ventricular hypertrophy.
The sole medical witness in this case testified that in his opinion Mr. Richards’ coronary artery disease was not caused by his employment. But, tellingly, the cardiologist testified that Mr. Richards’ well-documented hypertension developed during the time of his active employment, that the hypertension caused damage to Mr. Richards’ heart, and that hypertension is one of the main risk factors for the development of coronary artery disease. The cardiologist’s testimony was tempered by his statement that it was possible that Mr. *531 Richards developed the coronary artery disease as a result of the hypertension and, most importantly, could not rule out that Mr. Richards’ employment played no role in the development of his coronary artery disease.
C
When we correctly apply the Act’s presumption to what the WCJ characterized as a dearth of medical evidence, we must conclude that the WCJ was clearly wrong in finding that Mr. Richards’ employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to the heart disease from which he died. The relationship between hypertension and coronary artery disease |12is not after all unrecognized. See Coats v. City of Bossier City, 31,164 (La.App. 2 Cir. 10/30/98), 720 So.2d 1283.
The cardiologist’s testimony is at best equivocal. The medical evidence in this case is insufficient for the parish government to overcome the Act’s presumption. Thus, we must apply the presumption and find that Mr. Richards’ employment was a contributing factor, if not the sole cause, in Mr. Richards’ heart-related disease and death, which entitles his widow to workers’ compensation’s benefits.
Ill
In this Part, we consider the Second Circuit decision which the parish government and the WCJ consider dispositive of the issue presented in this appeal. See Gilliland v. City of Monroe, 42,458 (La. App. 2 Cir. 10/10/07), 968 So.2d 270. The parish government successfully argued to the WCJ that Gilliland effectively changed the analysis of the Act’s presumption by — for the first time — applying the articles on evidentiary presumptions found in the Code of Evidence. The parish government further argued, and the WCJ agreed, that by applying the general evi-dentiary articles to the Act’s presumption, the presumption is more easily overcome by an employer. We disagree.
First, the judiciary has been applying the Act’s presumption in a consistent way for at least forty years before the Gilli-land decision, oftentimes even noting that its application was the intent of the legislature. “A long line of,jurisprudence holds that those who enact statutory provisions are presumed to act deliberately ]1sand with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view.” Borel v. Young, 07-0419, pp. 7-8 (La.11/27/07), 989 So.2d 42, 48. Gilliland itself remarked upon the early strengthening of the presumption by Act 30 of 1975 and the legislature’s apparent displeasure in the result reached in the Third Circuit’s decision in Bates v. Bituminous Cas. Corp., supra. See Gilliland, 42,458, p. 5, 968 So.2d at 273; also see n. 2, ante. The legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184; see also Louisiana Safety Ass’n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass’n, 09-0023, pp. 9-10 (La.6/26/09), 17 So.3d 350, 356. Also, as we noted in Part I-A, ante, the legislature restricted the Act’s presumptions to exclude volunteer firefighters but nothing was done to amend the Act’s presumption as it was applied by the courts to employees in the classified fire service.
Second, while it is true that the Gilli-land decision seemed to be applying the Code of Evidence to the Act’s presumptions, we do not share the view that the Code of Evidence effected a substantive *532 change in our treatment of the Act’s presumption. Commentators, in addressing the treatment of rebuttable presumptions in the civil law, distinguish between the “bursting bubble” or Thayer approach, and the Morgan view. Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law 2009 (West, 2009), p. 358. The former approach |,/‘ascribes a lighter weight to the presumption, and holds that upon proof of the predicate fact the opponent faces only the burden of coming forward with some credible evidence against the existence of the fact to be inferred.” Id., pp. 358-359. “If the opponent produces such evidence the presumption disappears (“bursts”) and the trier-of-fact is not instructed as to the existence of a presumption; it simply decides the issue on the basis of all evidence heard, as with any other fact.” Id., p. 359.
The so-called “Morgan view,” or latter approach, however, “affords greater weight to the presumption.” Id. “Proof of the predicate fact fixes on the opponent the full burden of persuasion, or the duty of disproving the fact to be inferred.” Id. (emphasis added). The Commentators conclude that Chapter 3 of the Evidence Code (La. C.E. arts. 301-308) “in keeping with prior Louisiana caselaw, adopts the Morgan approach affording a somewhat stronger weight to presumptions.” Id.
Third, we note that the Second Circuit, in a heart-related disease case far more similar to the facts of this case than those of the lung-related disease case in Gilli-land, did not apply any new analysis for applying the Act’s presumption as purportedly established by Gilliland. See City of Bossier City v. Colvin, 45,278 (La.App. 2 Cir. 5/19/10), 36 So.3d 1207.
It is true that Gilliland seems to reject the Morgan approach. Gilliland, 42,458, pp. 14-15, 968 So.2d at 277 (“unless the statutory inferred facts or inferences’ receive higher evidentiary weight than the controverting inferences from the medical evidence ..., the WCJ’s choice between the competing inferences | ^was not clearly wrong”). In the end, however, we do not consider that Gilliland introduces a new day in applying the Act’s presumption. The Gilliland WCJ, persuaded by a post-retirement chest x-ray that showed no active pulmonary disease coupled with the firefighter’s long history of cigarette smoking, and aided by the medical testimony of a lack of employment-related causation, found that the employer overcame the Act’s presumption. The Second Circuit found no clear error with the WCJ’s ruling. Gilliland, 42,458, pp. 14-15, 968 So.2d at 277. Here, there was EKG evidence of the effects of hypertension on Mr. Richards’ heart before his retirement, and the medical testimony pointed to no other cause. In the end, the trier-of-fact must be “persuaded by evidence of the nonexistence of the fact to be inferred.” La. C.E. art. 302(3) (emphasis added). In Gilli-land, the court found from the evidence that the Act’s presumption had been overcome and that the employer proved the nonexistence of the causation factor. 42,-458, p. 14, 968 So.2d at 277.
Considering the correct application of the Act’s presumption, however, and especially in light of the objective and indisputable EKG evidence that was generated dui’ing Mr. Richards’ period of active employment, the WCJ was clearly wrong in finding that the employer had conclusively established the nonexistence of the fact that Mr. Richards’ employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to his heart-disease from which he died.
|mIn this Part, having concluded that the decision of the WCJ must be reversed as clearly wrong, we address the relief to which Mrs. Richards is entitled. We have *533 previously decided that even though Mr. Richards was retired at the time of his death from coronary artery disease, his widow was nonetheless entitled to death benefits as his beneficiary. See Richards v. St. Bernard Parish Government, 09-1138 (La.App. 4 Cir. 10/21/09), 25 So.3d 867. The amount of a widow’s benefit is limited to 32 and 1/2% of the deceased spouse’s average weekly wage. See La. R.S. 23:1232. Mr. Richards’ average weekly wage was $1,394.61, and thus the weekly indemnity or death benefit is set at $453.25. See Johnson v. City of Lake Charles, 04-0455 (La.App. 3 Cir. 9/29/04), 883 So.2d 521. This benefit is retroactive to November 1, 2008, the date of death, with legal interest thereon from the due date of each installment commencing with the date of Mr. Richards’ death. The “burial expenses” of Mr. Richards are to be paid as provided by La. R.S. 23:1210.
DECREE
The judgment of the Office of Workers’ Compensation in favor of the St. Bernard Parish Government and against Elizabeth Richards, widow of Raleigh Richards, dismissing with prejudice her disputed claim for death benefits is reversed.
There is now judgment in favor of Elizabeth Richards and against the St. Bernard Parish Government awarding her weekly benefits in the amount of $453.25, retroactive to November 1, 2008, with legal interest thereon from the due |ndate of each installment, and continuing until her death or remarriage, and the burial expenses of Mr. Richards, payable as provided by La. R.S. 23:1210, with legal interest thereon from date of filing the disputed claim for compensation.
REVERSED AND RENDERED

. The full text of the statute reads:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
La. R.S. 33:2581.

. That of the version of the statute did not include the language added by Act 30 of 1975: “and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed.” See Bates v. Bituminous Cas. Corp., 266 So.2d 556 (La. App. 3rd Cir. 1972), a decision which apparently prompted the adoption of Act 30.

. See also Amos v. Ouachita Parish Police Jury, 43,289 (La.App. 2 Cir. 6/18/08), 991 So.2d 102, which applies these same precepts to in a lung-disease case.

. See also McClure v. City of Pineville, 06-279, p. 10 (La.App. 3 Cir. 12/6/06), 944 So.2d 795, 802 ("Medical testimony to the effect that a firefighter's employment probably did not contribute to a firefighter’s lung disease, which is tempered by an acknowledgement that his employment cannot be ruled out as a contributing factor, is not sufficient to rebut the Heart and Lung Act’s presumption.”)