712 So.2d 968 (1998)
Bart S. MISTROT
v.
YORK INTERNATIONAL.
No. 97-CA-2374.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1998.
*969 Jack A. Ricci, Gary J. Giepert, Ricci & Giepert, New Orleans, for Appellee.
Joseph B. Guilbeau, Mayra I. Leyva, Juge, Napolitano, Leyva, Guilbeau & Ruli, Metairie, for Appellant.
Before KLEES, LOBRANO and CIACCIO, JJ.
LOBRANO, Judge.
In this worker's compensation case, the plaintiff, Bart Mistrot, was awarded supplemental earnings benefits, all medical expenses (including psychiatric evaluation and treatment), and, because of defendant York International's (York) refusal to provide psychological and vocational treatment, statutory penalties and attorney's fees. From this judgment York appeals, and Mistrot has answered that appeal.
Mistrot was employed by York International as an air conditioning technician. On July 12, 1994, during the course and scope of his employment, Mistrot sustained a severe electrical shock. Immediately following the accident, he was taken to Meadowcrest Hospital. There, he was attended by a plastic surgeon, Dr. Dupin, and a neurologist, Dr. *970 Puente, among others. His left hand had suffered an electrical entry wound, and both feet bore the marks of the exit wounds. Mistrot complained then, as he has thereafter, of bilateral ankle pain.
Neurological exams performed by Dr. Puente the day after the accident and almost two years later showed no evidence of neurological dysfunction; Dr. Puente opined that Mistrot's description of his ankle pain was consistent with a soft tissue injury, but had no objective findings to support that opinion.
Dr. Dupin treated Mistrot until May of 1995. At that time, Dr. Dupin felt that Mistrot had reached his maximum medical improvement. Although Mistrot still had complaints of ankle pain, Dr. Dupin felt that Mistrot could return to work.
Dr. Dupin did refer Mistrot to an orthopedist, Dr. Cashio, who first saw Mistrot in March of 1995. Dr. Cashio recommended ankle supports and anti-inflammatory medication; when that medication failed to relieve Mistrot's discomfort, Dr. Cashio referred him to Dr. Marra, a rheumatologist, for evaluation. On October 2, 1995, Dr. Cashio opined that Mistrot could return to work "at Dr. Marra's discretion."
Dr. Marra treated Mistrot up through the time of trial. As early as January of 1996, Dr. Marra expressed his opinion that Mistrot could not return to his previous occupation. By May of 1997, he stated that Mistrot could perform sedentary work, though at that time Mistrot was only trained for physical work. Dr. Marra suggested that Mistrot suffered from depression because of his chronic pain and loss of functionality; eventually, Dr. Marra recommended psychiatric care.
Due to the lack of objective findings, and based on sections of the reports of Drs. Cashio, Dupin, Puente, and Dr. Akin (a physician York brought in for independent evaluation), York terminated all benefits on December 19, 1996, thus negating the opportunity for psychological evaluation or treatment. Mistrot filed suit January 22, 1997. In April of 1997, at York's request, Mistrot was examined by another rheumatologist, Dr. Sanders. Dr. Sanders made no objective findings to explain or corroborate Mistrot's complaints of pain; however, he did not rule out possible psychological problems. He stated that his opinions regarding treatment, causation of the pain, and Mistrot's ability to work would depend on the outcome of a psychiatric evaluation.
The worker's compensation judge gave extensive reasons and concluded that Mistrot was entitled to temporary total benefits through December 16, 1996; that he is entitled to supplemental earnings benefits (SEB) from that date;[1] that York was arbitrary and capricious in failing to authorize psychological and vocational treatment; and that Mistrot is entitled to the payment of all medical bills, medication expenses and transportation expenses arising from the accident. The judge awarded penalties in the amount of two thousand dollars ($2,000.00) and attorney's fees in the amount of two thousand dollars ($2,000.00). The court rejected Mistrot's claim that York was arbitrary and capricious for terminating disability benefits on December 16, 1996.
Both York and Mistrot appeal. York argues that the trial court erred in finding (1) that Mistrot was entitled to SEB; (2) that Mistrot was entitled to psychiatric evaluation and treatment; (3) that York was arbitrary and capricious in failing to authorize vocational and/or psychiatric evaluation; (4) that penalties and attorney's fees were due to Mistrot as a result of York's conduct; and (5) that Mistrot is entitled to payment of all medical bills and expenses arising from the accident. Mistrot argues that the court erred in failing to find York arbitrary and capricious for terminating disability benefits. For the following reasons, we affirm in part and reverse in part.
If a work-related injury results in a claimant's inability to earn at least 90% of his pre-injury wages, he is entitled to supplemental earnings benefits. La. R.S. 23:1021(3). Once an employee establishes his inability to earn at least 90% of pre-injury *971 wages, the burden shifts to the defendant employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 739. The purpose of SEB is to compensate the injured employee for the loss of wage earning capacity; the inquiry is therefore necessarily "a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation is to be liberally construed in favor of coverage." Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97) at pp. 8-9, 696 So.2d 551, 556, quoting Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
The appellate court's standard of review is one of manifest error. We must determine, not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, supra. The factfinder's choice between two permissible views of evidence can never be manifestly erroneous. In this case, York complains that the court erroneously decided that Mistrot satisfied his burden of proving a disability. In support of this argument, York relies on the fact that none of the physicians who testified could find objective reasons for Mistrot's continued complaints of pain. York specifically refers to Dr. Dupin's June 16, 1995 report wherein he finds no physical reason why Mistrot could not return to work, to Dr. Puente's failure to find any neurological problems, and to Dr. Cashio's October 2, 1995 opinion that Mistrot could return to work. Finally, York questions the credibility of Dr. Marra's contrary opinion because of the lack of objective findings, and of Mistrot's testimony in general.
Undoubtedly, Mistrot sustained a severe electrical shock. His complaints of pain in his ankles have been consistent since the date of injury. Dr. Cashio's "return to work" opinion is qualified by "Dr. Marra's discretion." Despite no objective findings, Dr. Marra opined that Mistrot's ankle pain is posttraumatic and prevents him from returning to his previous occupation. Dr. Sanders examined Mistrot after this lawsuit was filed and concluded that there were no objective findings to substantiate Mistrot's pain; however, Dr. Sanders emphatically stated that any opinion he rendered with respect to causation and ability to work was dependent on a psychiatric evaluation.
Three relevant facts are mentioned throughout the medical evidence. First, Mistrot has consistently complained of bilateral ankle pain since the accident. Second, there is no objective evidence to support those continued complaints. Third, physicians hesitated to give a definite opinion until a psychological evaluation has been conducted. The treating physician, Dr. Marra, is emphatic that Mistrot's complaints are sincere, as is his inability to perform his former job. There is no error in the trial court giving Dr. Marra's testimony more weight than that of the other physicians.
York's main argument is that Mistrot failed to prove a disability. However, we find no clear error by the trial judge in accepting Dr. Marra's opinion that Mistrot cannot return to his former job at this time. While we are cognizant of the "no objective evidence" argument York advances, the circumstances of this case support SEB payments at least until further psychological evaluation is completed. In view of the opinions of Dr. Marra and York's own physician, Dr. Sanders, York should have at the least authorized and paid for a psychological evaluation before terminating all benefits.[2] An SEB award is payable during the period of disability up to a maximum of 520 weeks. La. R.S. 23:1221(3); Johnson v. Chateau Living Center, 96-1360 (La.9/13/96), 679 So.2d 95. However, at any time, either party can seek modification when a change of condition warrants. La. R.S. 23:1310.8. Thus, we find SEB payments were the proper remedy *972 based on the facts as they existed at the time of trial.
York, in its second assignment of error, argues that the court was wrong in ordering a psychiatric evaluation and treatment. In support, York cites La. R.S. 23:1021(7)(c) and (d) for the propositions that mental injury caused by physical injury must be proved by clear and convincing evidence and that the recommendation of a treating physician who is not a psychiatric specialist is irrelevant to establishing mental injury.
We do not disagree with York's statements of the law. However, the issue is not a trial court finding of mental injury, only of the necessity for an evaluation. The court, in light of the recommendations of Drs. Marra and Sanders, ordered that York pay for a psychiatric evaluation. The outcome of that evaluation will be relevant to York's future responsibilities vis-a-vis medical expenses and SEB benefits. Therefore, neither this court nor the trial court has concluded that Mistrot suffers a mental injury as a result of his physical injury. We only affirm the necessity for a psychological evaluation to determine whether there is a mental problem and a connexity to the accident. To the extent the trial court judgment says "evaluation and treatment," we interpret it to mean, at this point, only evaluation. Obviously, if the examination reveals no clear and convincing evidence of an accident-related mental injury, York is not responsible for psychological treatment.[3]
In the next assignment of error, York argues that the trial court erred in finding that York was "arbitrary and capricious herein, for failing to authorize psychological treatment, vocational rehabilitation; and other medicals when they were prescribed." For these failures, York was held liable for two thousand dollars ($2,000.00) in damages and an additional two thousand dollars ($2,000.00) in attorney's fees.
Regarding the penalty for failing to authorize psychological treatment, York points to an erroneous statement in the Reasons for Judgment. The trial judge stated that there were "numerous requests for psychological treatment which were ignored by the adjuster." York insists that the facts do not support such a finding, and after reviewing the record, we agree.
York terminated all benefits in December, 1996. The trial judge indicated that Dr. Marra had diagnosed Mistrot with depression as early as January of 1996. However, a review of Dr. Marra's deposition indicates that, in fact, such a determination was made in January of 1997. While Mistrot may well have been suffering from depression previous to this date, only then did Dr. Marra begin discussing possible psychological treatment with him. Even then, Dr. Marra did not make a specific referral to a psychiatrist or psychologist.
When Dr. Marra first began treating Mistrot in May of 1995, he did prescribe Elavil, which is often used as an antidepressant. However, both Dr. Marra's testimony and the dosage prescribed indicate that Elavil was being used as a painkiller only. Not until Mistrot's January 1997 visit did Dr. Marra raise the subject of depression with him. In March of that year, Dr. Marra did prescribe Zoloft as an antidepressant. Previous to this, none of Mistrot's physicians had indicated the need for psychological treatment.[4] Mistrot himself did not request it until May 18, 1997; York authorized that evaluation four days later, on May 22. There is no indication in the record that Mistrot was evaluated by a psychiatrist prior to the June 16, 1997 trial. While the record definitely supports a need for an evaluation, given the chronology of the recommendations by Drs. Marra and Sanders York cannot be arbitrary and capricious in their response.
*973 However, York's failure to authorize vocational training for Mistrot is more problematic. Mistrot has a high school education; he learned his airconditioning and refrigeration trade in the Air Force. He grew up working on a farm and continued with his father on the farm after leaving the military. When his father passed away, Mistrot returned to the air-conditioning business. Mistrot has no work experience besides farming and air-conditioning repair, both of which are physically demanding.
From the date of the accident to the time of trial, Mistrot consistently complained of ankle pain and limited mobility. As Mistrot has no experience or training to prepare him for any sedentary job, vocational training would appear to be in order. Mistrot's attorney first requested such training on November 7, 1995. He repeated those requests on November 28 of that year, then on January 8, February 1, and May 28 of 1996. Those requests were supported by a January 1996 letter from Dr. Marra, affirming Mistrot's physical problems and inability to return to his former occupation. However, York did not act upon these requests.
York's repeated failure to authorize such training was not explained sufficiently at trial. When questioned on the subject, York's representative, Kellene Graci, said: "Well, based on the information we had from Dr. Marra, he's saying to me he cannot work. So, therefore, what is there to rehabilitate?... He cannot return to his previous position. He cannot return to any work in the foreseeable future." This answer is unpersuasive; Mistrot cannot both be so improved as to require no further medical treatment and also too disabled to benefit from vocational rehabilitation.
York argues that neither Mistrot nor his physicians indicated exactly what type of work Mistrot could perform, and that without any guidelines, York could not initiate vocational rehabilitation. Mistrot's vocational limitations might, however, have been best determined by a vocational specialist; York never made provisions for such an evaluation. Considering Mistrot's frequent requests for vocational rehabilitation, and York's repeated failure to act upon those requests, we conclude that the trial court did not err in finding York arbitrary and capricious in this regard. However, we reduce the award to one thousand dollars ($1,000.00) in damages and one thousand ($1,000.00) in attorney fees.[5]
In their final assignment of error, York asserts that the trial court erred in finding that Mistrot is entitled to the payment of all medical bills, medication expenses, and transportation expenses arising from the July 12, 1994 accident. There is no error in that ruling since it is merely a general statement of York's responsibilities under the Worker's Compensation statute. York fails to point to any specific medical obligation not related to the accident other than the obligation for future medicals. The trial court judgment correctly makes no award for future medicals. Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96) 673 So.2d 1292.

ANSWER TO APPEAL:
Mistrot argues that the trial court erred in failing to find York arbitrary and capricious in its termination of benefits in December of 1996. Mistrot points to the conflicting opinions offered by his various treating physicians, and accuses York of acting only upon those portions of the reports that favored terminating his claim. This pick-and-choose method of review, Mistrot argues, suggests that York's handling of his case was self-serving, rather than dedicated to any genuine appraisal of Mistrot's claims of injury. Mistrot characterizes that conduct as arbitrary and capricious.
Although we have affirmed the trial court's holding that Mistrot did successfully prove his ongoing medical problems, and that York should not have discontinued benefits in December of 1996, we cannot, on the evidence before us, say that York's conduct reached the level of "arbitrary and capricious."
*974 When a claim for benefits is reasonably controverted, then the failure to pay those benefits is not arbitrary and capricious. See, La. R.S. 1201(F)(2). While York's ultimate determination may have been at odds with the finding of the trial court, that determination was based upon opinions from Mistrot's treating rheumatologist, neurologist, orthopedist, and plastic surgeon; those physicians did indicate that Mistrot no longer presented with any objective signs of ongoing injury. Those findings do support York's position to the degree that we refuse to classify the cessation of benefits as arbitrary and capricious. Accordingly, Mistrot's assignment of error is without merit.
For the reasons assigned, that portion of the trial court judgment which finds York arbitrary and capricious for failing to provide psychological treatment is reversed. The judgment is amended to provide for $1,000.00 in penalties and $1,000.00 in attorney fees for the arbitrary and capricious failure to provide vocational rehabilitation; in all other respects the judgment is affirmed.
REVERSED IN PART; AMENDED IN PART, AND, AS AMENDED, AFFIRMED.
NOTES
[1] Actually the weekly SEB ordered amounted to the same $319.00 per week that was paid for temporary total disability. Presumably, this was because of defendant's failure to prove the availability of a job.
[2] We recognize that York terminated benefits before Dr. Marra's psychiatric recommendation in January of 1997, and before Dr. Sanders' April, 1997 opinion. However, at the very least, York should have reinstated benefits at that time, and continued them until the results of a psychological examination.
[3] La. R.S. 23:1021(7)(c) requires proof of a mental injury by clear and convincing evidence.
[4] Worthy of note is the fact that Mistrot's attorney had been describing his client as suffering from depression as early as November of 1995. However, this was all in correspondence requesting vocational rehabilitation; the possibility of psychological treatment is not discussed. These communications therefore do not constitute requests for psychological counseling, although they are not without impact in this case and will be discussed in greater detail, infra.
[5] Our reduction is based on the fact that the original $2,000.00 award was predicated on a finding by the trial court that York was arbitrary and capricious in two areas, one of which we reversed.