LBAGNERIS, Judge.
Defendants, Tulane Properties, Inc. (d/ b/a Rodeway Inn) and Louisiana Workers’ Compensation Corporation (LWCC), appeal a judgment awarding plaintiff, James D. Bennett, supplemental earnings benefits (SEB) and continued medical treatment, including surgery.

PROCEDURAL HISTORY

Plaintiff filed a claim with the Office of Workers’ Compensation alleging entitlement to benefits beyond those that he was receiving. In addition, plaintiff sought approval for surgery. After a hearing on the merits, the Workers’ Compensation judge entered judgment for plaintiff finding that plaintiff was unable to earn 90% of his pre-injury wages and was therefore entitled to SEB based upon an earning capacity of $180/week ($6.00/hr. x 30 hrs). The judge further found that plaintiff was entitled to continuing medical treatment as recommended by Drs. Vogel and Montz, including surgery. Defendants appeal and assign the following errors:
I. The workers’ compensation judge committed legal error and was manifestly erroneous in finding James Bennett entitled to supplemental earnings benefits based upon an earning capacity of $180.00 per week.
1SII. The workers’ compensation judge committed legal error and was manifestly erroneous in declaring that James Bennett “is entitled to continued medical treatment as recommended by his physicians, Dr. Vogel and Dr. Montz, including any surgical procedures recommended by said physicians ...”
III. The workers’ compensation judge committed legal error and was manifestly erroneous in stating “ claimant is disabled due to his back injury of January 26,1995.”

FACTS

Plaintiff injured his back in a work-related incident on January 26,1995. As a result of the injury, plaintiff received treatment from seven separate doctors and a chiropractor. He also received physical therapy and underwent numerous tests, including x-rays, MRIs and CT scans. The diagnoses ranged from plaintiff having a degenerative disc condition requiring rest and physical therapy to disc herniation requiring surgery. LWCC approved the majority of plaintiffs visits and tests, but it denied plaintiff surgery.
On January 31, 1995 plaintiff began medical treatment for his injury at the Browne McHardy Clinic under the supervision of Dr. Larkin, an orthopedist. Dr. Larkin treated plaintiff consistently until 1997. Through the course of treatment Dr. Larkin conducted several tests on plaintiff, including x-rays and an MRI, and concluded that plaintiff suffered from a neck and back strain. He also determined that plaintiffs body was neurologically intact. For several months after plaintiffs injury Dr. Larkin recommended bed rest, heat, low back exercises and painkillers.
In April 1995, after unsuccessfully returning plaintiff to work, Dr. Larkin recommended physical therapy, which was approved by LWCC.[1] On September 1995 Dr. Larkin found that plaintiffs complaints outweighed the physical findings, | nevertheless, Larkin recommended plaintiff refrain from working for an additional month. Plaintiffs complaints remained unchanged and throughout 1996 Dr. Lar-kin continued the aforementioned treat *132 ment and recommended plaintiff not return to work.
In November 1996 Dr. Larkin requested a second opinion and a repeat MRI. LWCC refused the MRI at this time, but approved one in February 1997, which was subsequently conducted by Dr. Mímeles. Also in February 1997 plaintiff informed Dr. Larkin that he was working as a courier. During this time, Dr. Larkin recommended that plaintiff be restricted to light-duty employment and not lift items over 25 pounds. Shortly thereafter, plaintiff informed Dr. Larkin that he had quit his job as a courier on March 31, 1997 due to the long hours. Despite this knowledge, Dr. Larkin again restricted plaintiff to employment that did not require bending, squatting or lifting over 25 pounds. In May 1997 Dr. Larkin requested permission of LWCC to send plaintiff to a colleague at Browne McHardy, Dr. Montz, for additional evaluation because he was “at a loss about what to do with [plaintiff] now.” At no time during plaintiffs treatment did Larkin recommend surgery.
Immediately after his injury plaintiff also sought treatment from Dr. Garrett, a chiropractor. Dr.Garrett manipulated plaintiffs spine, applied heat treatments and diagnosed him with a lumbar sprain.
In April 1995 LWCC sent plaintiff to Dr. Mímeles, an orthopedist, for a second opinion. Dr. Mímeles diagnosed plaintiff with a lumbar strain and determined that his MRI was normal. He did not recommend surgery and suggested that plaintiff could perform light duty work. Plaintiff returned to Mímeles in January 1997 for a re-evaluation. Dr. Mímeles performed another MRI and conducted an EMG nerve study and found no changes. He opined that |Bplaintiff suffered from degenerative disc disease and did not have herniation. He reiterated that plaintiff was not a surgical candidate.
In May 1995 plaintiff visited neurosurgeon Dr. LeClerq. It is unclear from the record as to what his diagnosis was as no evidence was submitted; however, a notepad kept by an LWCC employee indicated that Dr. LeClerq diagnosed plaintiff with a lumbar and cervical strain, but no disc herniation. He recommended surgery. After this diagnosis, plaintiff did not seek additional treatment from Dr. LeClerq.
After visiting Dr. LeClerq, LWCC sent plaintiff to Dr. Applebaum, a neurosurgeon, who reviewed plaintiffs % MRI and diagnosed him with minimal bulging discs. Dr. Applebaum found no herniations, and did not recommend surgery.[2]
Because Drs. LeClerq and Applebaum submitted conflicting opinions, LWCC sent plaintiff to an independent medical examiner, Dr. Schumacher, in March 1996. After reviewing plaintiffs myelogram and CT scan, Dr. Schumacher diagnosed plaintiff with minimal disc bulging, with no herniation. He did not recommend surgery, and opined that plaintiff should return to an occupation that was restricted too light-duties.
As stated above, in May 1997 Dr. Larkin referred plaintiff to orthopedist, Dr. Montz. Dr. Montz diagnosed plaintiff with chronic degenerative lumbar disc disease. He did not recommend surgery and advised plaintiff to secure a sedentary job.
|fiIn October of 1997 plaintiff on his own accord visited Dr. Vogel, another neurosurgeon, who diagnosed plaintiff with a herniated disc with possible symptomatic lumbar degenerative disease. Dr. Vogel recommended laser surgery.
LWCC initiated vocational rehabilitative services on May 28, 1996 conducted by vocational rehabilitative specialist Jean Lillis. Lillis met with Bennett at his home and conducted an initial evaluation. Shortly after, Lillis administered a career ability placement survey, interest ability *133 test, and a transferable skill analysis to Bennett.
After identifying numerous jobs that were within plaintiffs limitations Lillis requested Drs. Larkin and Schumacher to approve such jobs as being appropriate for plaintiff. Dr. Larkin approved a phone sales job, toll taker and loss prevention officer. Dr. Schumacher approved the aforementioned jobs in addition to an order taker, pest control worker and a courier.
Prior to his injury plaintiff earned $375.00 per week. Total temporary disability payments were instituted immediately after plaintiffs injury and constituted $250.00/week. These payments remained constant until February 25, 1997, at which time the LWCC reduced plaintiffs payments to SEB calculated at $6.00/hr. at 40 hours per week.

STANDARD OF REVIEW

Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep’t of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-378.

DISCUSSION

SEB

[7“The purpose of SEBs [sic] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). La. R.S. 23:1221(3)(a) entitles an employee to SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. (West 1998).
Generally, a claimant has the initial burden in establishing that he is entitled to SEB. Fortune v. Charbonnet-La-bat Funeral Home, 95-1954 (La.App. 4 Cir. 3/14/96), 671 So.2d 988, 991. Once the claimant bears his burden, an employer has the burden of proving job availability, however, such burden may be relieved by a showing that the jobs offered are suitable and “within the claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region.” Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 557. A suitable job is one that the claimant is not only physically capable of performing, but “falls within the limits of claimant’s age, experience, and education.” Id. In addition, the employer must establish the amount of wages aclaimant may be expected to earn and the actual positions available at the time the claimant receives notification of the jobs. Id. Once the employer’s burden is met, the burden shifts to the employee to show “by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform employment offered or available solely as a consequence of substantial pain.” Fortune, 671 So.2d at 993
SEB, if owed, is calculated on “sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in | Rany month thereafter in any employment or self-employment....” La. R.S. 23:1221(3)(a) (West 1998).
Defendants do not dispute that plaintiff is entitled to SEB. Instead defendants argue that the workers’ compensation judge was in error in assessing plaintiffs SEB based on a thirty-hour workweek. In addition, defendants argue that they are entitled to a reduction in benefits currently being paid.
The record indicates that during % - /6s the LWCC identified twenty jobs that *134 were within plaintiffs limitations.[3] The jobs identified ranged in hourly wage from $6.00/hr to $12.50/hr. Dr. Schumacher approved the majority of these jobs while Dr. Larkin, plaintiffs treating orthopedist, approved at least five positions, including a phone sales representative, toll taker, and loss prevention officer.[4] There is conflicting evidence in the record as to the exact number of jobs of which plaintiff was informed, however, prior to LWCC’s reduction of plaintiffs benefits it is clear that he had been informed of at least six positions.
The medical evidence that had been provided to LWCC overwhelmingly indicated that plaintiff suffered from degenerative disc disease and surgery was not recommended. At the time benefits were reduced, only one doctor had recommended surgery for plaintiff, four' had not. The record also indicates that prior to the reduction of benefits LWCC approved additional testing, including an EMG (nerve conduction test), conducted on 1/14/97, and a MRI, conducted on 1/15/97. Results of both tests were negative and no indication of herniation appeared.
| flSignificantly, plaintiff did not inform LWCC or present any medical documentation to LWCC that he was only capable of working a 30-hour work week. The medical reports from this period indicate that plaintiffs doctors recommended that he was capable of performing light-duty employment, and that he had no objection to this. Plaintiff even began working as a courier for a brief time, indicating to LWCC that he was physically in condition to work.
Ms. Lillis testified that she had informed plaintiff about the majority of jobs and the reason he failed to investigate such jobs was the possibility of a courier position that he had discovered independently of her efforts. Lillis also testified that she confirmed the jobs with the employers. We find that such efforts by LWCC are sufficient to meet their burden in assessing plaintiffs SEB at forty hours a week.
In his brief to this court, plaintiff does not contest the above information or present a legal argument to support a finding that his benefits should be based on a part-time basis. Instead, plaintiff asserts that because his treating orthopedist placed him on part-time duty his benefits should be based as such.
At trial plaintiff introduced a doctor’s note that stated his hours should be reduced to thirty hours a week. We find that this note lacks credibility and we would question the admissibility of such note under ordinary circumstances.[5] However, we recognize that the workers’ compensation judge is not bound by the technical rules of evidence and procedure, nevertheless all findings of fact must be based upon competent evidence. La. R.S. 23:1817 (West 1998).
It is unclear from the record exactly when the note was given to plaintiff and who issued the note. The note is dated 4/24/97, yet the record reflects that Dr. |inLarkin did not treat plaintiff on that day. At first plaintiff testified he received the note that day, but later changed his mind and could not remember if he got the note on that day or on another day. Furthermore, the note is not signed personally by Dr. Larkin. Instead, an “S. Roth” on behalf of Dr. Larkin signs the note. It is unknown as to who S. Roth might be and if he/she had permission to sign such note. Other than this note, there is no indication in the record that Dr. Larkin recom *135 mended plaintiffs work hours be reduced to thirty hours a week. Contrarily, Dr. Larkin’s 1997 reports indicate that he was aware plaintiff was working as a courier and ultimately quit the job because of the hours. Despite this knowledge Dr.Larkin continued to recommend that plaintiff work light duty jobs and not lift over 25 pounds. We find that such a note is not competent evidence that Dr. Larkin ordered plaintiffs work hours to be reduced to 30 hours a week, thus the trial judge was manifestly erroneous when using 30 hours a week in assessing plaintiffs SEB. Thus, this part of the judgment is reversed, and defendants are due a credit for any SEB paid to plaintiff based on 30 hours a week.
Defendants also request that this court establish plaintiffs proven earning capacity based upon the jobs cited and allow a retroactive credit for the amount of overage. While it is true that the amount of SEB to be paid to a claimant may be subject to change in any month in which defendant is able to show plaintiff is actually earning wages or is able to earn wages, defendants chose to base plaintiffs SEB on $6.00/hr., such an amount was not imposed by the hearing judge. See, Prevost v. Jobbers Oil Transport Co., 95-0224, p. 5 (La.App. 1 Cir. 10/6/95), 665 So.2d 400, 404, writ denied, 96-0440 (La.4/8/96), 671 So.2d 336; Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2 Cir. 1988), |₁₁writ denied, 537 So.2d 1168 (La.1989). We can find no reason to assess plaintiffs SEB otherwise. If defendants seek a reduction, they may bring a request properly before the Office of Workers’ Compensation.

MEDICAL TREATMENT AND SURGERY

Defendants also contend that the hearing’s judge was erroneous in awarding plaintiff continued medical treatment as recommended by Drs. Vogel and Montz, including surgery. We begin with the proposition that under La. R.S. 23:1203 an employer is obligated to furnish all necessary medical expenses related to a work injury. A determination by the workers’ compensation judge that a claimant is entitled to medical treatment is a factual finding and shall not be disturbed absent manifest error or clearly wrong. Fenyes v. Highland Park Medical Center, 97-0120 (La.App. 1 Cir. 2/20/98), 708 So.2d 493.
A review of the record indicates that at least two of the doctors plaintiff visited recommended surgery - Doctors LeClerq and Vogel.[6] Although such a recommendation contradicts the other opinions, we can not say that the workers’ compensation judge was- manifestly erroneous in her conclusion that surgery is warranted. We therefore, affirm this part of the judgment.
Defendants also complain that the judgment at issue awards plaintiff future medical expenses. It is undisputed that a claimant in workers’ compensation case is not allowed judgment for future medical expenses. Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96), 673 So.2d 1292. We therefore reverse the part of the decree to the extent that it is an award for future medical services; | ^however, we note that our ruling does not deprive plaintiff of his right to medical expenses that are incurred as a result of his work-related injury.

FINDING OF DISABILITY

In their last assignment of error defendants contend that the hearing’s judge was manifestly erroneous when she stated that “claimant is disabled”.. Although probably inadvertent, such a statement is inconsistent with the judge’s award of SEB and is hereby stricken from the judgment.

*136
AFFIRMED AS AMENDED IN PART; REVERSED IN PART.

. In July 1995, Healthsouth Sports Medicine & Rehab Center discharged plaintiff from physical therapy for missing four consecutive sessions.

. Prior to this evaluation plaintiff had been sent to Dr. Culicchia, a neurologist, for evaluation. Before Dr. Culicchia could examine plaintiff, plaintiff departed from the doctor's office.

. Among the jobs identified were a pest control agent, a toll taker, phone sales representative, driving instructor, order taker, loss prevention officer, and security officer.

. Lillis testified that she sent a job approval form to plaintiff's treating neurosurgeon, Dr. LeClerq, who declined to comment on the positions because he had not seen plaintiff in over a year. Lillis did not send job approval forms to Dr. Vogel because she was unaware that he had been treating plaintiff.

.Defense counsel had never seen the note and no foundation had been laid for its introduction into evidence.

. In its brief, defendants refer to Dr. Montz's recommendation of surgery, however, such a recommendation is not present in the record.